IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERWYN D. FREEMAN, JR.,              :      CIVIL ACTION NO. **3:CV-04-1546**
                                      :
                  Plaintiff           :
                                      :      (Judge Munley)
                                      :
            v.                        :      (Magistrate Judge Blewitt)
                                      :
DIANE INCH, et al.,                   :
                                      :
                  Defendants          :

**REPORT AND RECOMMENDATION**

**I. Background.**

The Plaintiff, Sherwyn D. Freeman, Jr., an inmate at the U.S. Penitentiary at Allenwood ("USP-Allenwood"), Pennsylvania, filed this *Bivens*[1] action, *pro se,* pursuant to 28 U.S.C. § 1331, on July 16, 2004, naming as Defendants two (2) individuals employed by the Federal Bureau of Prisons ("BOP") at USP-Allenwood, namely Physician's Assistant ("P. A.")  Diane Inch and P. A. Clemente Frimpong. (Doc. 1, pp. 1-2).  Plaintiff claimed that he did not receive proper medical care at the prison for his serious ear infection and requested several million dollars in damages, as well as for the Court to commute his remaining prison term.  This case is  proceeding  on the Eighth Amendment claims of denial of proper medical  care against both Defendants.

The District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992). Additionally, a defendant's conduct must have a close causal connection to the plaintiff's injury in order for liability to attach. *Martinez v. California*, 444 U.S. 277, 285 (1980).

The Plaintiff requested $3 million in compensatory and punitive damages from the Defendants, as well as for the Court to commute his remaining sentence. (Doc. 1, p. 3). The Plaintiff paid the requisite filing fee. (Doc. 4).[2] We then preliminarily screened the Complaint pursuant to 28 U.S.C. §1915A.[3]

---

[2]The Plaintiff also filed Motion for Appointment of Counsel, which the Court denied. (Docs. 2 & 5).

[3]Since Plaintiff paid the filing fee, we reviewed the complaint under 28 U.S.C. §1915A(b). *See Vega v. Kyler*, C.A. No. 03-1936 (3d Cir. 2004) 2004 WL 229073 (non-precedential) (If prisoner pays filing fee, civil rights complaint is subject to review under 28 U.S.C. § 1915A(b) and not 28 U.S.C. § 1915(e)(2)(B)).

We found that Plaintiff had sufficiently stated an Eighth Amendment claim of denial of proper medical care as against both Defendants.[4]   We found that "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825 (1994) *citing Helling v. McKinney*, 509 U.S. 25 (1993); *Wilson v. Seiter*, 501 U.S. 294 (1991);  *Estelle v. Gamble*, 429 U.S. 97 (1976).   We found that the Plaintiff met the first and second hurdles of *Estelle* with respect to both Defendants*, i.e.,* the Defendant was deliberately indifferent to his medical  needs with respect to his right ear infection and that his medical needs were serious, as he alleged a permanent lose of hearing in this ear.

On July 30, 2004, we issued an Order directing service of the Plaintiff's Complaint on the Defendants.  (Doc. 6).  The Defendants were then served, and we granted them an extension of time to respond to the Complaint.  (Doc. 22).  On December 3, 2004, the Defendants filed a joint Motion to Dismiss or for Summary Judgment. (Doc. 30).  On December 17, 2004, the Defendants filed their support Brief and filed support exhibits.  (Docs. 34 & 35).  Defendants' Statement of Facts was attached to their Brief.  (Doc. 34).  The Plaintiff filed his opposition Brief with his attached Declaration and his Statement of Facts and Exhibits on December 29, 2004.  (Docs. 38 & 39).  The Defendants' Motion is now ripe for disposition.

---

[4] Plaintiff alleged that he was not properly treated to adequate medical care for his right ear infection in January, 2004, and that the Defendants were aware of his condition and acted in deliberate indifference to his medical needs, including the failure to treat his infection for over four (4) days which caused him to permanently lose his hearing in the ear.  (Doc. 1, p. 2 & attached handwritten pages 1-3).

## II. Motion to Dismiss.

When evaluating a motion to dismiss for failure to state a claim under Rule 12 (b)(6), the court must accept all material allegations of the complaint as true and construe all inferences in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 44-46 (1957); *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir. 1988). A complaint that sets out facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Estelle v. Gamble*, 429 U.S. 97, 107-108 (1976). A complaint filed by a *pro se* party should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (citation omitted).

## III. Discussion.

### A. Statutory Immunity

The Defendants initially contend that Defendant Inch is statutorily immune from this *Bivens* suit, pursuant to the Public Health Services Act ("the Act"), 24 U.S.C. § 233(a)-(b), and that the Plaintiff's claims for damages based on the actions taken by her as a Public Health Service ("PHS") employee acting within the scope of her employment, have as an exclusive remedy a suit against the United States in a Federal Tort Claim Act ("FTCA") action. (Doc. 34, p. 6).[5] The Act, as

---

[5] The Defendants did not file a Notice of Substitution of the United States to be named as a Defendant in place of Defendant Inch pursuant to the Act.

discussed below, specifically references claims for medical damages, as our Plaintiff is alleging in the instant case.  The Defendants also indicate that Defendant Inch is a Public Health Service employee, and Inch attests to this fact in her Declaration.  (*Id*. & Doc. 35, Ex. 2,  ¶ 1.).  Based on the Plaintiff's Complaint and Declaration (Doc. 1 & Doc. 38, Ex. 1), and the Declaration of Defendant Inch (Doc. 35, Ex. 2), we find that Inch was acting within the scope of her employment as a Public Health Service employee with respect to Plaintiff's claims against her in his pleadings, *i.e.*, in her capacity as a prison P.A. she denied Plaintiff medical care for his ear infection over the weekend of January 2-4, 2004.

In their Brief, the Defendants state that the courts have held that the Act applies to a *Bivens* action, such as the present one.  (Doc. 34, p. 6).  The Defendants state that Inch is immune from this suit since she is a Public Health Service employee, and that the FTCA is the exclusive remedy for personal injuries arising from the performance of medical care by a PHS employee acting within the scope of her office.  (*Id*.).  If the FTCA is the Plaintiff's remedy, then the United States must be substituted as the proper party Defendant in place of Inch.  We agree with the Defendants and conclude that because the United States has to be substituted as the proper party Defendant in lieu of Defendant Inch, the Plaintiff's case fails as to Defendant Inch since he cannot maintain a *Bivens* action against the United States.  Thus, we shall recommend that the Defendants' Motion to Dismiss as to Inch be granted and that this action be dismissed as against her.

We have found several courts, including and in addition to the one cited by Defendants in their Brief, which have held that the FTCA is an inmate's sole remedy for injuries allegedly received by a Public Health Service employee acting within the scope of their employment.  The Court in

5

*Navarrete v. Vanyur*, 110 F. Supp. 2d 605, 606 (N.D. Ohio 2000), stated as follows with respect to

not allowing a *Bivens* action against a PHS employee:

> In *Bivens*, the Supreme Court established a right for victims to
> recover damages for constitutional violations made by federal
> officials. 403 U.S. at 390-97, 91 S.Ct. 1999 (1971). However, the
> high court made two exceptions to this cause of action. *Id.* at
> 390-97, 91 S.Ct. 1999. The exception pertinent to this case is
> that a *Bivens* action may not be maintained when "defendants show
> that Congress has provided an alternative remedy which it
> explicitly declared to be a substitute for recovery directly under
> the Constitution and viewed as equally effective." *Carlson v. Green*,
> 446 U.S. 14, 18-19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (citing
> 403 U.S. at 397, 91 S.Ct. 1999; *Davis v. Passman*, 442 U.S. 228,
> 245-47, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979)).
>
> The Public Health Service Act provides that an action against
> the United States under the Federal Tort Claim Act ("FTCA") is
> the exclusive remedy
>
> > for personal injury, including death, resulting from
> > the performance of medical, surgical, dental or
> > related functions, including the conduct of clinical studies
> > or investigation, by any commissioned officer or
> > employee of the Public Health Service while acting
> > within the scope of his office or employment.
>
> 42 U.S.C. § 233(a). Thus, Congress has expressly made the FTCA
> an inmate's sole remedy for injuries received by Public Health
> Service Officers acting within the scope of their employment.
> *See Lewis v. Sauvey*, 708 F.Supp. 167, 169 (E.D. Mich. 1989). Two
> Sixth Circuit panels that have directly addressed this issue did not
> permit prisoners to pursue a *Bivens* actions (sic) against prison
> doctors for acts or omissions made while performing their official
> tasks, holding that the FTCA provides "the exclusive remedy in
> a civil suit that is brought against a Public Health Service Officer
> if the civil suit involved subject matter that is covered by the
> FTCA." *Beverly v. Gluch*, No. 89-1915, 1990 WL 67888 *1
> (6th Cir. 1990); *see also Walls v. Holland*, No. 98-6506, 1999
> WL 993765 (6th Cir. 1999) (holding that the FTCA offers the
> exclusive remedy for personal injuries resulting from the performance

of medical and related functions by a commissioned Public
Health Service Officer acting within the scope of her office).

According to *Navarrete,* since our Plaintiff is alleging injuries resulting from Defendant Inch's performance of her P. A. medical duties at USP-Allenwood, and since Inch is undisputedly a PHS employee who was at all relevant times acting within the scope of her employment, we concur with the Defendants (Doc. 34, p. 6) that the FTCA is the Plaintiff's exclusive remedy. The Plaintiff must bring his claim asserted against Defendant Inch in an FTCA action against the United States. *Id.* at 607.

In the case of *Valdivia v. Hannefed*, 2004 WL 1811398 (W.D. N.Y.), the Plaintiff filed a *Bivens* action against the PHS director alleging that he was denied proper medical treatment when he was an INS detainee. The *Valdivia* Court held that the PHS employee was entitled to absolute immunity from the *Bivens* action and that the Plaintiff's remedy was under the FTCA. Specifically, the Court stated as follows:

> The Public Health Service Act provides that
> > The remedy against the United States provided by [the Federal Tort Claims Act] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by an (sic) commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against an officer or employee (or his estate) whose act or omission gave rise to the claim.
> 42 U.S.C. § 233(a). The defendant, C. Henneford, is a Lieutenant Commander with the Public Health Service. Dkt. #52, ¶ 3. In that capacity, he provides administrative supervision of clinical services provided to detainees at the

> Buffalo Federal Detention Center.  Dkt. #52, ¶ 3. Thus,
> even if the defendant were personally involved in any decision
> with respect to the plaintiff's medical care, those decisions
> would fall within the scope of his employment with the
> Public Health Services, thereby affording the defendant absolute
> immunity from a *Bivens* action and requiring the plaintiff to
> seek relief pursuant to the Federal Tort Claims Act. [FN3].
> *See Cuoco*, 222 F.3d at 108 (The Federal Tort Claims Act
> "protects commissioned officers or employees of the Public
> Health Service from being subject to suit while performing
> medical and similar functions by requiring that such lawsuits
> be brought against the United States instead.").

*Id.* at *4.[6]

> The Act provides as follows:
> > Under that Act, the exclusive remedy against the United States
> > "for damage for personal injury, including death, resulting from
> > the performance of **medical**, surgical, dental, or related functions . . .
> > by any commissioned officer or employee of the Public Health
> > Service while acting in the scope of his office or employment"
> > shall be pursuant to the Federal Tort Claims Act ("FTCA"),
> > 28 U.S.C. § 2671, *et seq.*, 42 U.S.C. § 233(a).

*Wilder v. Luzinski*, 123 F. Supp. 2d 312, 313 (E.D. Pa. 2000) (Emphasis added).

Since it has been verified that Defendant Inch was acting within the scope of her employment as a PHS employee when she was performing medical care on the Plaintiff, care which Plaintiff is attacking in this case as inadequate and as causing him injury, there is no dispute that the Plaintiff's claims against her are subject to the requirements of the FTCA. *Id.* at 314. *See* 42 U.S.C. § 233(a); 28 U.S.C. § 2675(a).  We find no merit to the Plaintiff's argument that since he filed suit against Defendant Inch in her individual capacity and as an employee of the BOP, it is "irrelevant"

---

[6]The *Cuoco* case cited by the *Valdivia* Court is also referenced in our Defendants' brief, Doc. 34, p. 6.

that Inch is a PHS employee.  (Doc. 38, p. 5).

The Court in *Rendon v. U.S.A.*, 91 F. Supp. 2d 817, 818 (E.D. Pa. 2000), stated that:

> Under the Public Health Service Act, the United States, in
> certain circumstances, may "deem" entities and their employees
> to be a part of the Public Health Services (PHS), thereby bringing
> them within the jurisdiction of the Federal Torts Claims Act
> (FTCA).  42 U.S.C. § 233.  Under § 233, the FTCA is the exclusive
> remedy for medical malpractice committed by PHS employees
> acting within the scope of their employment.  42 U.S.C. § 233(a), (g).

Therefore, under § 233 of the Act , the FTCA is the exclusive remedy for Plaintiff's claims

that Defendant Inch did not properly treat his ear condition and intentionally caused him harm

when she refused him treatment for four days (*i.e.*, January 2, 2004, to January 6, 2004 (Doc. 39,

Att. 4 & Doc. 38, Ex. 1, ¶'s 4.-9.)), since it has been verified that she was acting within the scope

of her employment as a PHS employee.  *Id*.[7]

Thus, the United States should be substituted as the Defendant in this action in place of

Defendant Inch and Plaintiff's *Bivens* action should be dismissed as against Inch, since Plaintiff

cannot maintain a *Bivens* action against the United States.  The United States did not waive

sovereign immunity for a *Bivens* suit.  In order to state an actionable *Bivens* claim, a Plaintiff must

allege that a person has deprived him of a federal right guaranteed by statute or the constitution,

and that the person who caused the deprivation acted under color of federal law.  *See West v.*

_____

[7]In fact, in response to Plaintiff's BP-10 administrative remedy request appeal, the BOP
Regional Director advised the Plaintiff that he could not seek monetary compensation *via* his
administrative remedy request against the prison staff clinician who allegedly refused to examine
his ear on January 2 and 5, 2004, but that he may request money damages by submitting a
claim under the FTCA.  (Doc. 35, Ex. 1, p. 21).

*Atkins*, 487 U.S. 42, 48 (1988).  The United States is not a person under *Bivens*.

The law is clear that the United States has not waived its sovereign immunity as to constitutional tort claims for money damages.  *See FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996 (1994). Additionally, "[b]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity." *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994).

**B.  Exhaustion of Administrative Remedies.**

As their second argument, the Defendants state that the Plaintiff did not exhaust his administrative remedies prior to filing this action as against Defendant Frimpong.  (Doc. 34, pp. 6-9).

In his pleading, the Plaintiff indicated that he exhausted all of his administrative remedies with respect to his claims.  (Doc. 1 at p. 1).  The Plaintiff attached, as exhibits to his Statement of Facts, copies of his administrative remedy requests and responses from the BOP.  (Doc. 39, Att. 4-5).  The Defendants have also submitted copies of the Plaintiff's administrative remedy requests and the BOP's responses.  (Doc. 35, Ex. 1, Att. 1, pp. 14-24).  The Defendants have properly raised the Plaintiff's failure to exhaust by filing a motion to dismiss.  The Defendants must plead and prove the exhaustion issue as an affirmative defense in accordance with *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Here, the Defendants have raised this defense and have offered supporting documentation. (Doc. 35, Ex. 1, Att. 1 & 2).  As the *Ray* Court noted, failure to exhaust may be raised as the basis for a motion to dismiss in appropriate cases, and we find that this defense is properly asserted in the Defendants' Motion to Dismiss in our case.  *Id*. at 295, n. 8.

The Defendants have moved to dismiss, in part, arguing that the Plaintiff has failed to exhaust his administrative remedies with respect to any of his claims against Frimpong. (Doc. 34, pp. 6-9). Specifically, the Defendants concede that the Plaintiff has exhausted his claims against Defendant Inch that she failed to treat his ear infection from January 2, 2004, to January 6, 2004. (*Id.*, p. 8). However, the Defendants state that the Plaintiff has not exhausted his instant claim with respect to Defendant Frimpong's alleged denial of medical treatment on January 3, 2004.[8] (*Id.*). Defendant contends that the Plaintiff has raised this claim as against Defendant Frimpong for the first time in his present pleading. (*Id.*). The Defendants have submitted evidence to show that the Plaintiff did not exhaust his administrative remedies regarding his present *Bivens* claim against Defendant Frimpong. (Doc. 35, Ex. 1, ¶ 7. & Att. 2, pp. 4-13).[9] Further, the Plaintiff's own exhibits (Doc. 39, Att. 4 & 5) do not show that he exhausted his present claim against Frimpong.[10] Rather, they show that he exhausted his present Eighth Amendment claims against Inch. (*Id.*).

---

[8] The record is clear that the Plaintiff only specifically mentioned Inch by name in his administrative remedy requests and that he did not even directly mention Frimpong by name. (Doc. 35, Ex. 1, pp. 14-24).

[9] The documents marked as Attachment #1 to Wallace's Declaration, pp. 4-13, are BOP Administrative Grievance Records, and the documents marked as Attachment #2, pp. 14-24, are the Plaintiff's administrative remedy requests and the BOP's responses regarding his claim against Defendant Inch. (Doc. 35, Ex. 1, Att. # 1 & # 2). Since all pages of the Exhibit are numbered, we shall refer to the documents by their page numbers.

[10] In his Complaint, the Plaintiff avers that "on the evening of January 3, 2004, Plaintiff verbally told PAC Frimpong that he had a pus leaking ear infection and Frimpong stated to Plaintiff that there was nothing he could do because he was only passing out pill-line medicine and not taking sick calls." (Doc. 1, attached p. 3).

The Plaintiff claims in this action that he asked Defendant P. A. Frimpong for medical treatment for his "pus leaking ear infection" on January 3, 2004, that he made Frimpong visually and verbally aware of his ear condition, and that this Defendant refused him treatment since the Defendant stated he was only passing out the "pill-line medicine" and was not taking sick calls. (Doc. 1, attached p. 3). The Plaintiff further claims that this Defendant "practiced deliberate indifference toward the Plaintiff 's complaints because Frimpong knew Plaintiff faced a substantial risk of harm and further bodily damage and disregarded that risk by failing to take reasonable measures to abate it." (*Id.* & Doc. 38, Ex. 1, Plaintiff's Declaration, ¶'s 11.-12.).

In his opposition Brief to the Defendant's Motion, the Plaintiff details how, in his view, he has exhausted his administrative remedies. The Plaintiff claims that he has administratively exhausted his claim against Defendant Frimpong. (Doc. 38, p. 5). The Plaintiff states that in all of his administrative remedy requests, including his BP-11 appeal to the BOP Central Office, continuation page, he complained about his ear infection to the (unnamed) P.A.'s who delivered medication to the SHU on January 3 and January 4, 2004, but that he was told by all of them that he would have to wait until Monday, January 5, 2004, for help. (Doc. 38, p. 6). The Plaintiff also states that Frimpong admits that he was on duty on January 3, 2004, and that he conducted rounds in the SHU to deliver medications on that day. (Doc. 39, Att. 7). This fact is undisputed by the Defendants. (Doc. 35, Ex. 3, ¶ 3.).

Specifically, in the Plaintiff's BP-11 appeal to the BOP Central Office, he stated as follows:

> Plaintiff also complained about his ear infection to the PA's who delivered medication to the Special Housing Unit during the weekend of January 3 and 4, 2004, but was told by all of them that he would have to wait until Monday, January 5, 2004, for help.

(Doc. 39, Att. 4, continued page & Doc. 35, Ex. 1, Att. 2, p. 23).   As stated, this same continuation page was attached to Plaintiff's BP-9 as well.   (Doc. 35, Ex. 1, Att. 2, p. 18).   The Plaintiff contends that since Frimpong was the only P. A. who was delivering medicine to the SHU in the evening of January 3, 2004,[11] he [Plaintiff] has "adequately implicated him [Frimpong] as an offender in his Administrative Remedies."   (Doc. 38, p. 6).   The Plaintiff also claims, without any substantiation, that the Warden told him that he did not need to identify Frimpong by name in his administrative remedy request and only had to complain about the incident.   (*Id*.).   The Plaintiff states that the BOP was thus on notice of his instant claim against Frimpong.

The Defendants' evidence reveals that the Plaintiff's BP-8 and BP-9 administrative remedy requests, in the identical attached continuation pages, also contained the aforementioned sentence, which was included in his BP-11, about the P.A.'s who delivered medicine in the SHU on January 3 and 4, 2004.   Specifically, as stated, the Plaintiff claimed that he complained about his ear infection to the P. A.'s who delivered medications in the SHU during the relevant weekend and was told by "all of them" that he had to wait until Monday for treatment.   (Doc. 35, Ex. 1, pp. 18, 23).

Based on the undisputed evidence, we agree with the Defendants and find that the Plaintiff has not substantially complied with the exhaustion requirement as to his present Eighth Amendment claim against Defendant Frimpong.

Prior to initiation of an action such as this, as both parties recognize, the Plaintiff is required to exhaust his administrative remedies.   42 U.S.C. § 1997e(a).   Section 1997e(a) provides that "[n]o

---

[11]There is no evidence that only Frimpong delivered medications in the SHU on the evening of January 3, 2004.  Nor is there any evidence that Frimpong worked at the prison in the SHU on January 4, 2004.

action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

As discussed below, and both parties concur, the Bureau of Prisons ("BOP") has an administrative remedy procedure with respect to inmate complaints, namely 28 C.F.R. § 542.10, *et seq*.  The exhaustion requirement is a mandatory prerequisite to filing suit and must be sufficiently alleged.  *See Booth v. Churner*, 206 F. 3d 289 (3d Cir. 2000) *aff'd* 532 U.S. 731, 121 S. Ct. 1819 (2001); *Nyhuis v. Reno*, 204 F. 3d 65 ( 3d Cir. 2000).  Even if a Plaintiff is seeking both injunctive and monetary relief,  he still must exhaust his administrative remedies, as the PLRA makes no distinction between claims for damages, injunctive relief, or both.  *Id.*  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.*

The Third Circuit Court of Appeals, as stated above, has held in the case of *Ray*, 285 F.3d at 295-296, that the defendant has the burden of pleading and proving failure to exhaust administrative remedies as an affirmative defense in a civil rights action. The Defendants, as discussed, have  properly asserted this defense in the present case.

14

1.  Bureau of Prisons Administrative Remedy Program.

"The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own imprisonment.  28 C.F.R. § 542.10(a). "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate statutorily-mandated procedures." *Id*. § 542.10(c).  Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter.  28 C.F.R. § 542.13(a).  If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden.  28 C.F.R. § 542.14(b).  The warden is then to respond to the inmate's complaint within fifteen (15) days.  *Id*. at § 542.14.  If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director within 20 days.  *Id*. at § 542.15.  If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons within 30 days,  which office is the final administrative appeal in the Bureau of Prisons.  *Id*.  No administrative remedy appeal is considered to have been finally exhausted until rejected by the Bureau of Prisons' Central Office.  28 C.F.R. § 542, *et seq.*  (Doc. 35, Ex. 1, ¶'s 3.-4.).

The Defendants maintain that the Plaintiff has not commenced nor completed the BOP exhaustion requirements with respect to his Eighth Amendment claim against Defendant Frimpong, *i.e.*, Frimpong  deliberately denied Plaintiff medical treatment for his serious ear infection on January 3, 2004.  (Doc. 34, p. 8).  The Defendants argue that the Plaintiff has raised his stated Eighth Amendment claim against Frimpong for the first time in his instant *Bivens* action.  (*Id*.).  The

15

Defendants concede that the Plaintiff did, in fact, file administrative remedies and appeals regarding his Eighth Amendment claims against Defendant Inch that she denied him medical care from January 2 through January 5, 2004.  As stated, the Exhibits of the parties show that exhaustion was completed as to Defendant Inch.  But the Defendants argue that the Plaintiff's administrative remedy requests did not raise and put the BOP on notice of Plaintiff's present Eighth Amendment claim against Frimpong.  Rather, the Defendant asserts that the Plaintiff's undisputed administrative remedies challenged the medical care (or lack thereof) rendered by Defendant Inch.  (*Id*.).  Thus, Defendants maintain that the Plaintiff exhausted his appeals regarding his claims against Inch but not with respect to his specific Eighth Amendment claim against Frimpong asserted in this case.  We concur with the Defendants that based on the BOP's responses to the Plaintiff's administrative remedy requests and appeals, the BOP was clearly not on notice of the Plaintiff's present Eighth Amendment claim against Frimpong.   (Doc. 35, Ex. 1, pp. 15, 17, 21 & 24).   The BOP was unquestionably only on notice of the Plaintiff's Eighth Amendment claims against Defendant Inch, and only she was ever specifically mentioned in the Plaintiff's administrative remedy requests/appeals and in the BOP's Responses thereto.  (*Id*. pp. 14-24).

The Plaintiff's undisputed statement in his administrative remedy requests, that he also complained about his ear infection to the "PA's" who delivered medications to the SHU during the weekend of January 3 and 4, 2004, and that "all of them" told him he would have to wait until Monday (January 5, 2004) (Doc. 35, Ex. 1, p. 18), would, according to Plaintiff's position, also constitute an administrative remedy request against any and all of the other P.A.'s who were on

duty in the SHU this weekend and not just Frimpong.[12]  It would also, according to Plaintiff, put the BOP on notice that he had made an Eighth Amendment claim against all of these other unnamed P. A.'s as well.  Clearly, this is in contradiction to the notice requirement of the BOP's administrative remedy process.

Further, the Plaintiff did not allege in his administrative remedy requests that the unnamed P.A.'s acted deliberately indifferent to his ear condition, as he specifically did with respect to Defendant Inch.  Nor did the Plaintiff ever seek to amend or clarify any of his administrative remedy requests when he clearly could see that the BOP was only responding to his Eighth Amendment claim against Defendant Inch and that the BOP was not responding to any additional claim as against the P.A.'s who delivered medicine to the SHU on the weekend of January 3 and 4, 2004.

We have reviewed the administrative remedy requests and appeals upon which the Plaintiff relies in this case to support his position that he exhausted his remedies against Frimpong, Doc. 35, Ex. 1, pp. 14-24, and agree with the Defendants that they did not raise the present Eighth Amendment claim which the Plaintiff asserts against Frimpong in this case.   In his appeal to the BOP Regional Office,  the Plaintiff stated that "Inch's actions were vindicative (sic), deliberate, willful, and malicious.  As a result of Inch's deliberately indifferent behavior to Plaintiff's medical needs"  the Plaintiff suffered complete hearing loss in his right ear.  (Doc. 35, Ex. 1, p. 18).  The Plaintiff also stated that "Defendant  Inch willfully violated his Eighth Amendment constitutional

---

[12]As noted above, there is no evidence that Frimpong was on duty on January 4, 2004, or that he was assigned to deliver medicine in the SHU on this date.

right." (*Id*.).  As stated, notwithstanding the fact that the Plaintiff clearly knew of the appropriate Eighth Amendment standard for medical care, the Plaintiff did not make such a claim in any of his administrative remedy requests as to Frimpong or any unnamed P.A. The Regional Director's and the Central Office's Responses also dealt only with the Eighth Amendment claim of Plaintiff as against Inch. (*Id*., p. 21).  Thus, neither Plaintiff's Regional Office appeal nor his Central Office appeal addressed the above detailed Eighth Amendment claim he now asserts against Defendant Frimpong in the present case.   Consequently, the BOP never had the opportunity to address any Eighth Amendment claim that the Plaintiff may have had against Frimpong, as it did with respect to the Plaintiff's Eighth Amendment claim against Inch.

There is no evidence that the Plaintiff filed any other administrative remedies regarding his Eighth Amendment claim against Defendant Frimpong or any other P.A. who worked in the SHU on the weekend in question.  In fact, the Defendants' evidence shows that the stated administrative remedies were the only ones submitted by the Plaintiff regarding his Eighth Amendment claim of January 2, 2004, to January 5, 2004. (Doc. 35, Ex. 1, Wallace Declaration, ¶ 7. & Ex. 1, pp. 4-13).

As Defendants states (Doc. 34, p. 8), in order to exhaust his administrative remedies, the Plaintiff was required to file a grievance raising his present Eighth Amendment claim specifically against Defendant Frimpong.  *See Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (exhaustion requires the inmate to file a grievance specifically against the defendant.  "[A] prisoner [must] file a grievance against the person he ultimately seeks to sue . . ."). As discussed,  Defendant Frimpong is not mentioned in the Plaintiff's administrative remedy request and appeals in this case.  Further, it is clear from the BOP's responses to the Plaintiff's administrative remedies that it was not on

18

notice of the Plaintiff's present Eighth Amendment claim against Defendant Frimpong or against any of the other unnamed P.A.'s.  Additionally, the Plaintiff's claim against Frimpong, and any of the other P.A.'s on duty in the SHU on the weekend of January 3 and 4, 2004, was a separate claim, against separate individuals and premised on their own conduct with an independent legal theory and was not premised on the conduct of Defendant Inch, and as such should have, and could have, been raised in a separate administrative remedy request.

Therefore, we agree with the Defendant that the Plaintiff failed to exhaust his administrative remedies with respect to Defendant Frimpong.

2.  Procedural Default.

Recently, the Third Circuit in *Spruill v. Gillis*, 372 F. 3d 218, 230 (3d Cir. 2004), held that in a civil rights action, the PLRA's exhaustion requirement includes a procedural default component. The *Spruill* Court indicated that federal courts should evaluate a prisoner's procedural default within the applicable prison grievance system, *i.e.* "in the course of an existing and fully developed grievance," rather than "ascertaining whether a prisoner's undeveloped grievance would be futile." *Id.* at 231, n. 10.  Further, the prison's grievance system's procedural requirement may not be imposed in a way that offends the Constitution or federal policy as contained in §1997e(a), and that "compliance with the administrative remedy scheme will be satisfactory if it is substantial."  *Id.* at 232 (citation omitted).

The first inquiry, according to *Spruill*, is whether the Plaintiff literally exhausted his administrative remedies, that is, whether there are "further avenues of relief available to him within the prison's inmate grievance process."  *Id.*  As discussed above, the BOP provides for three levels

of appeal of a prisoner's complaint about prison conditions.  The Plaintiff's evidence has shown only that he has gone through all levels of appeals regarding his complaint about his inadequate medical care by Defendant Inch from January 2, 2004, to January 5, 2004. (Doc. 35, Ex. 1, pp. 14-24). Thus, as stated, the Plaintiff has not submitted evidence that he timely filed an administrative remedy request pertaining to his specific Eighth Amendment claim in this case against Defendant Frimpong, and he has not shown that he has exhausted his denial of medical care claim against Defendant Frimpong. (*Id*.).  Therefore, we find that the Plaintiff failed to go through all three levels of appeal as required by the BOP with respect to his present Eighth Amendment claim against Frimpong and that the Plaintiff's opportunity to file a formal administrative remedy request with the warden regarding this Eighth Amendment claim against Defendant Frimpong has now expired.[13] There are no further avenues of relief available to him in the BOP's grievance system with respect to his Eighth Amendment claim against Defendant Frimpong.

Next, according to *Spruill*, we must address the procedural default aspect to the exhaustion issue.  As the *Spruill* Court stated, "a court reviewing a prisoner's §1983 claim for compliance with §1997e(a) will have, at best, a ruling from a prison grievance appellate body on whether the prisoner complied with the prison grievance system's procedural rules." *Id*.  In our case, we have found that the Plaintiff has not submitted an administrative remedy request to the BOP with respect to his Eighth Amendment denial of medical care claim against Defendant Frimpong.  (Doc. 35, Ex. 1, Wallace Declaration, ¶ 7.).  We have also found that the BOP has not had the opportunity to

---

[13]28 C.F.R. § 542.14(a) provides that the deadline for submitting a formal written administrative remedy request (BP-9) is twenty (20) calendar days after the date of the incident.

administratively address the Plaintiff's Eighth Amendment claim against Frimpong.

The BOP administrative body has not ruled on the Plaintiff's procedural compliance with respect to Frimpong, since it did not construe the Plaintiff as making a claim against Frimpong in his administrative remedy requests, which specifically addressed only his claim against Inch.  Nor did the Plaintiff ever clarify that his administrative remedy request included a claim against Frimpong.  Thus, as in *Spruill*, the Court must undertake an independent procedural default inquiry, since no response from the BOP addresses the procedural implications of the Plaintiff's failure to name and to make a specific claim against Frimpong in his administrative remedy requests.  Also, as in *Spruill*, we find that the Plaintiff has procedurally defaulted his claim against Frimpong by failing to identify him.

The BOP administrative remedy process, 28 C.F.R. § 542.14(c)(2) and (3), provides in part that:

> (2) The inmate shall place a single complaint or a reasonable number of closely related issues on the form.  If the inmate includes on a single form multiple unrelated issues, the submission shall be rejected and returned without response, and the inmate shall be advised to use a separate form for each unrelated issue.
>
> (3) The inmate shall complete the form with all requested identifying information and shall state the complaint in the space provided on the form.

Further, the BOP's administrative remedy process did not excuse the Plaintiff's procedural default.  As discussed, the BOP was clearly unaware that the Plaintiff was asserting any claim against Frimpong or against any other P.A.

The BOP did not address any claim against Frimpong, or any other unnamed P.A., in any

21

of its responses to the Plaintiff's administrative remedy requests.   Thus, the purpose of the administrative remedy requirement, *i.e.,* to put the BOP on notice of the persons claimed to be guilty of wrongdoing, was thwarted in this case.  As discussed, the Plaintiff had ample opportunity to clarify or amend his administrative remedy request so that the BOP would have been on notice of his claim against Frimpong or against any of the unnamed P.A.'s working in the SHU on the weekend in question.  But he did not do so.  Based on the BOP's lack of awareness that Plaintiff was claiming Frimpong was involved in his denial of medical care claim, the Plaintiff's procedural defects in his administrative remedy requests are not excused.  As stated, the Plaintiff failed to identify Frimpong or clarify that he [Plaintiff] had a claim against any P.A. who worked in the SHU. The Plaintiff's administrative remedy requests and this *Bivens* action are about a specific instance of lack of adequate medical care and in which the BOP clearly was not aware Frimpong was implicated.

Thus, based on *Spruill*, the Plaintiff has procedurally defaulted exhaustion concerning his Eighth Amendment claim against Defendant Frimpong.

In light of the undisputed evidence regarding the Plaintiff's failure to exhaust his Eighth Amendment claim against Defendant Frimpong, we find that the Plaintiff has not shown substantial compliance with the BOP's administrative remedy process with respect to this Defendant.  Further, as discussed, the Defendants have submitted evidence that, while the Plaintiff administratively pursued his grievance against Defendant Inch (*Id.*, ¶ 6. & Ex. 1, pp. 14-24), he did not comply with the administrative remedy scheme of the BOP regarding his Eighth Amendment claim against Defendant Frimpong.  Thus, in reliance on *Spruill*, we find that the Plaintiff has procedurally

defaulted his Eighth Amendment claim against Defendant Frimpong alleging that the Defendant denied the Plaintiff medical care on January 3, 2004.

Therefore, we shall recommend that the Defendants' Motion to Dismiss **(Doc. 30)** be granted based on the statutory immunity of Defendant Inch, as a PHS officer, and for failure to exhaust administrative remedies with respect to the Plaintiff's Eighth Amendment claim against Defendant Frimpong.

## IV.  Recommendation.

Based on the above, we respectfully recommend that the Defendants' Motion to Dismiss the Complaint **(Doc. 30)** be granted based on the statutory immunity of Defendant Inch, as a PHS officer[14], and for failure to exhaust administrative remedies with respect to the Plaintiff's Eighth Amendment claim against Defendant Frimpong.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 16, 2005**

---

[14]As to Defendant Inch, since the FTCA is Plaintiff's exclusive remdy as against her, if the United States is substituted in her place as the proper party Defendant, then this *Bivens* action must also be dismissed as to the United States.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHERWYN D. FREEMAN, JR., | : | CIVIL ACTION NO. **3:CV-04-1546** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| DIANE INCH, et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March 16, 2005.**


Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3,  which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


**s/ Thomas M. Blewitt**
_____
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: March 16, 2005**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SHERWYN D. FREEMAN, JR.,          :          CIVIL ACTION NO. **3:CV-04-1546**
                                  :
          Plaintiff               :
                                  :
                                  :          (Judge Munley)
                                  :
          v.                      :          (Magistrate Judge Blewitt)
                                  :
DIANE INCH, et al.,               :
                                  :
          Defendants              :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **March    , 2005.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

26

magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.


                                                         **s/ Thomas M. Blewitt**
                                                         **THOMAS M. BLEWITT**
                                                         **United States Magistrate Judge**


**Dated: March      , 2005**